**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**KARA BARNETT AND JAMIE BALL**                                     **PLAINTIFFS**

**V.**                                  **NO.  2:08CV00085**

**DEAN DAVIDSON, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS AN OFFICER WITH THE
WYNNE POLICE DEPARTMENT; SHELBY
"TRIPP" CLARK, JR., INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS AN OFFICER WITH THE
WYNNE POLICE DEPARTMENT; KATHERINE
RIGGINS, INDIVIDUALLY AND IN HER
OFFICIAL CAPACITY AS AN OFFICER WITH THE
WYNNE POLICE DEPARTMENT; CHRIS FOLTZ,
INDIVIDUALLY; AND TERRY SABLOTNEY,
INDIVIDUALLY**                                     **DEFENDANTS**

<u>**ORDER**</u>

Pending are motions for summary judgment filed by Separate Defendants, Katherine

Riggins, Chris Foltz and Terry Sablotney, all in their individual capacities.  (Docket #'s 26 and

29) and by Separate Defendants Dean Davidson, Shelby "Tripp" Clark, Jr., and Katherine

Riggins, in their official capacities only, ("the City of Wynne, Arkansas"), and the City of

Wynne, Arkansas. (Docket # 83).  Plaintiffs have responded.  For the reasons set forth herein, the

motions are granted in part and denied in part.

<u>Facts</u>

On May 9, 2008, Plaintiffs Kara Barnett and Jamie Ball filed their Complaint in this

action making a number of claims arising from their stop, arrest and search on March 5, 2007, by

three Wynne city police officers, Dean Davidson, Kathy Riggins, and Shelby "Tripp" Clark, and

two Cross County Deputies, Chris Foltz and Terry Sablotney.  Plaintiffs originally sued all the

defendants in their individual capacities only.  On October 13, 2009, Plaintiffs amended their complaint to include official capacity claims against Defendants, Davidson, Riggins and Clark.

<u>First Stop by Deputy Foltz</u>

In the early morning hours of March 5, 2007, Cross County Deputy Sheriff Chris Foltz was proceeding northbound on Highway 1 in Cross County when he met a vehicle that appeared to be going faster than most other vehicles; when Deputy Foltz turned on his radar, it confirmed that the vehicle was speeding.  Deputy Foltz pulled the vehicle over and Plaintiff Barnett was the driver and only occupant of the vehicle.  Deputy Foltz asked Plaintiff Barnett for consent to search her vehicle and she granted her consent.  Deputy Foltz also asked Plaintiff Barnett to empty the contents of her purse and she voluntarily complied.  After a brief stop of 5-10 minutes, Plaintiff Barnett was released by Deputy Foltz with a written warning for speeding. Plaintiff Barnett admits that she has "no problem" with this first stop.

<u>Communications Between Wynne Officer Dean Davidson and Confidential Informant</u>

At or around the time that Deputy Foltz released Plaintiff Barnett with a warning for speeding, Separate City Defendant Officer Dean Davidson claims that he was contacted and informed by a confidential informant, Cindy Coburn, that Plaintiffs Barnett and Ball and a man named Michael Spath would be bringing methamphetamine into the City of Wynne. Defendant Davidson claims that the informant, Ms. Coburn, had given him information on cases before - approximately 40 times - and the information had been "rock solid" and had led to arrests in all 40 cases.  Plaintiffs deny that a confidential informant contacted Davidson.   Further, Plaintiffs claim that bias existed on the part of Davidson resulting from an incident in which Davidson testified in a child custody dispute against Barnett after which Barnett lost custody of her child.

2

<u>Meeting Between Wynne Officers Prior to Second Stop</u>

Defendants claim that after Davidson communicated with the confidential informant, the city officers convened a meeting behind the city police department building. Plaintiffs do not dispute that the officers held this meeting and claim that "a fair implication was Defendants concocted a plan to illegally violate the Plaintiffs' civil rights under federal law and commit state violations upon their persons, as seen from the incidents which followed."

At the meeting of the Wynne officers prior to the second stop, Davidson informed Separate City Defendants Tripp Clark and Kathy Riggins that he had heard from a confidential informant that "a green van was coming into town that was going to have dope in it."  Neither Deputy Foltz nor Deputy Sablotney was present at the meeting between the Wynne officers prior to the second stop and they claim that they were not  aware of the meeting.

<u>Second Stop by Wynne Officers</u>

After being stopped by Deputy Foltz (and while Davidson was allegedly communicating with the confidential informant and meeting with Separate City Defendants Clark and Riggins behind the police department), Plaintiff Barnett continued on Highway 1 until she arrived in Palestine, where she picked up Plaintiff Jamie Ball and two men at a gas station.  Plaintiff Barnett did not know one of the men and did not inquire as to his identity, he was later determined to be Michael Spath.

After picking up the individuals, Plaintiff Barnett proceeded down Highway 1 toward Wynne.  Plaintiff Barnett contends that she intended to take Plaintiff Ball to the emergency room in Wynne for some breathing problems.

Shortly after Plaintiff Barnett drove back into Wynne, the Plaintiffs' vehicle was pulled

3

over by the Wynne Police Department.  Defendants claim that the traffic stop was initiated by

Patrolman Clark after Clark observed the vehicle cross the centerline. Plaintiffs deny that the

vehicle crossed the centerline.

Sgt. Davidson was the shift commander on the evening in question and was in charge of

Patrolman Riggins and Clark.  When asked whether the stop was his or Davidson's stop, Clark

responded: "mine," however, Clark went on to agree that Davidson "took over" the stop when he

arrived.  Plaintiffs claim that all the Defendants participated in concerted actions to seize the

Plaintiffs.

One occupant of the vehicle, Jonathan Phillips, was arrested on a warrant by Patrolman

Clark.  Michael Spath, another occupant, was transported to jail by Davidson and had a stolen

checkbook in his possession.

While at the scene of the traffic stop, Davidson directed Riggins to conduct a pat-down

search of Barnett and Ball.  Plaintiffs claim that more than one pat-down search was conducted

and the searches were extremely degrading and sexual in nature.  Riggins claims that she used

the back of her hand and only touched the exterior of the Plaintiffs' clothing.  Plaintiffs claim

that she offensively touched them two to three times.

Neither Deputy Foltz nor Deputy Sablotney was present at the time of the initial

stop by the Wynne officers. However, Plaintiffs claim that Foltz spoke with Davidson prior to the

stop and he set all the events in motion by his actions.  Foltz and Sablotney arrived at the scene

after the initial stop.  Davidson asked Deputy Foltz to conduct an HGN field sobriety test on

Plaintiff Barnett.  Deputy Foltz conducted the test (performed by simply moving a light back and

forth in front of the subject's face while the subject follows the light with her eyes, looking for a

4

smooth transition in eye movement, a sign of sobriety) on Plaintiff Barnett at the scene of the stop and she failed the test. Foltz testified that at least two or three confirming tests needed to be performed to provide sufficient justification for an arrest. These confirming tests were not performed. Plaintiffs claim that Defendant Foltz admitted he knew that Defendant Davidson was biased toward Plaintiff Barnett. Neither Deputy Foltz nor Deputy Sablotney searched either of the Plaintiffs, their vehicle, or their personal belongings at any time.

Plaintiffs claim that they were detained at the scene of the stop for forty-five minutes to one hour. Although Barnett was eventually arrested for DWI, she claims that she was never told she was under arrest. Ball admitted to smoking methamphetamine on the day in question and that she was having significant problems with her drug habit at that time. However, these admissions came only after the extended detention of the Plaintiffs.

Plaintiffs claim that Defendant Foltz took Plaintiff Ball into custody and held her in his vehicle. He then transported Ball to jail at Davidson's request. Deputy Foltz claims that he was "being nice" and invited Plaintiff Ball to sit in his vehicle while the police questioned the occupants. Plaintiffs contend that Deputy Foltz illegally detained Ball as a prisoner while she was ill. Plaintiffs claim that Ball was sick, needed medical attention, and should not have been held in cold weather for nearly an hour. However, when asked if Separate County Defendant Chris Foltz did anything wrong with regard to her, Plaintiff Jamie Ball stated: "Besides being there joining them, no, Chris didn't do anything wrong to me. He was actually really nice."

Plaintiff Barnett claims that Defendant Sablotney participated in her unlawful detention and shined a light in her eyes. She testified that she cannot remember any other interaction that she had with Defendant Terry Sablotney on the date in question.

5

<u>Strip Searches of the Plaintiffs</u>

Plaintiffs claim that, once at the jail, they were strip searched by Defendant Riggins and an unnamed jail matron.  Davidson claims that he instructed Riggins to take Plaintiff Jamie Ball to the jail to be searched because he knew about a previous incident where Plaintiff Ball had hidden prescription drugs in her underwear when she was taken to jail in the past.  Ball claims that this incident is irrelevant but admits it occurred.  Plaintiffs deny that this was the reason Plaintiff Ball was strip searched and claim that she was not charged with a crime; she was illegally arrested and detained.  The search occurred in a windowless room and lasted less than five minutes.  During the strip search, Riggins did not touch Ball other than to take her clothing.  Riggins testified that she was directed by Davidson to conduct the strip search and she did not personally have probable cause to strip search Ball.  (Riggins deposition, p. 46, l. 24-25, p. 47, l. 1).

Riggins claims that Davidson also directed her to go over the DWI Statement of Rights form with Plaintiff Barnett.  Riggins states that she read the statement to Barnett and Barnett refused to take a urine test.  Riggins advised Davidson that Barnett refused to sign the implied consent form and refused to provide a sample to test her level of impairment.  Following this exchange, Plaintiff Barnett was strip searched by a female jail matron.

Deputy Foltz and Deputy Sablotney deny participating in or ordering any strip searches of the Plaintiffs.   Plaintiffs allege that all the Defendants played a part in the strip searches of Plaintiffs.

According to the Plaintiffs, their rights were violated when the officers stopped the vehicle in which they were traveling, without probable cause; when officers extended their

detainment unreasonably; when Ms. Barnett was arrested, without probable cause; when the

Plaintiffs were strip searched, without cause; and when officers fabricated charges against the

Plaintiffs.  Defendants Riggins, Foltz and Sablotney claim that there is no proof that they violated

Plaintiffs' rights and they are entitled to qualified immunity.  Plaintiffs claim that there are

genuine issues of material fact which preclude the entry of summary judgment.

The City of Wynne contends that Plaintiffs have failed to state a claim upon which relief

can be granted against the City, and even assuming they have stated a claim, the Plaintiffs failed

to offer evidence to establish municipal liability against the City.  Plaintiffs argue that sufficient

evidence has been presented to support their claim that the City of Wynne failed to properly train

the three City Defendants in dealing with and protecting the civil rights of individuals during a

traffic stop, detention and arrest.

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial

courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is
> a need for trial -- whether, in other words, there are genuine factual
> issues that properly can be resolved only by a finder of fact because
> they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

## Discussion

Plaintiffs bring claims against these defendants pursuant to 42 U.S.C. §1983,  alleging that their Fourth, Sixth[1] and Fourteenth Amendment rights have been violated by both county and city officers, the Arkansas Civil Rights Act,[2] and for the state tort claims of false imprisonment,

---

[1]Plaintiffs also claim violations of the Fifth Amendment but it is not applicable to this case. Plaintiffs have no claim under the Fifth Amendment as the due process clause of the Fifth Amendment applies only to the federal government. See *Warren v. Government Mortgage Ass'n.*, 611 F.2d 1229, 1232 (8th Cir.), *cert. denied*, 449 U.S. 847 (1980).

[2] Claims under ACRA are analyzed in the same manner as § 1983 claims, *see Sylvester v. Fogley*, 383 F.Supp.2d 1135, 1139 (W.D.Ark. 2005).  Therefore, the Court will not discuss the ACRA separately, but its rulings on Plaintiffs' § 1983 claims apply equally to Plaintiffs' ACRA claims.

malicious prosecution, abuse of process, slander/defamation and the tort of outrage.

Section 1983 provides for liability in an action at law against any person who, under color of State law, deprives any citizen "of any rights, privileges, or immunities secured by" federal law. 42 U.S.C. § 1983; *see Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (noting that Section 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred' ").  However, government officials are entitled to dismissal "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sanders v. City of Minneapolis, Minn*., 474 F.3d 523, 526 (8th Cir.2007) (quotation omitted). "In addressing an officer's claimed entitlement to qualified immunity, the court must first determine whether the allegations amount to a constitutional violation, and then, whether that right was clearly established." *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "Qualified immunity is not just a defense to liability, it constitutes immunity from suit." *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir.2005).  If the allegations and undisputed facts do not amount to a constitutional violation, there is no necessity for further inquiries concerning qualified immunity. *Ambrose v. Young*, 474 F.3d 1070, 1077 n. 3 (8th Cir.2007) (standard of review explained).  If a constitutional violation is established, the Court must determine "whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Plaintiffs allege that the Defendants acted in concert to deprive them of their constitutional rights.  To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1)

that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir.1999). The plaintiff is also required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. *Id.*

A law enforcement officer who was not involved in the allegedly unconstitutional actions of other officers has not violated a plaintiff's constitutional rights and is entitled to qualified immunity. *See Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir.2006) ("Liability for a federal constitutional tort is personal, [and] each defendant's conduct must be independently assessed.")

**Traffic stop**:  Plaintiffs complain that the traffic stop initiated by Patrolman Clark was "pre-textual as an excuse to conduct a warrantless search."  Defendants claim that the traffic stop was initiated by Clark after Clark observed the Plaintiffs' vehicle cross the centerline. Neither Separate Defendant Foltz nor Sablotney was present at the time of the traffic stop and Defendant Riggins arrived shortly after the stop.  Plaintiffs claim that the Defendants acted in concert to "seize" the Plaintiffs and that Foltz "set [it] all in motion."

A traffic stop is a seizure within the meaning of the Fourth Amendment and, as such, must be supported by reasonable suspicion or probable cause. *United States v. Jones*, 269 F.3d 919, 924 (8th Cir.2001) (*citing Delaware v. Prouse*, 440 U.S. 648, 653 (1979)).  A law enforcement officer has reasonable suspicion when the officer is aware of "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Martin*, 706 F.2d 263, 265 (8th Cir.1983). When a police officer observes a traffic violation he has probable cause to stop

10

the vehicle. *Whren v. United States*, 517 U.S. 806, 818 (1996). "This is true even if a valid traffic stop is a pretext for other investigation." *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir.2002).

Defendant Clark contends that Plaintiffs' vehicle crossed the center line justifying the stop. Plaintiffs deny this contention. The question whether the stop by Defendant Clark was supported by reasonable suspicion or probable cause is in dispute. However, there is no evidence that Separate Defendants Riggins or Sablotney participated in or conspired to cause the initial traffic stop.

Plaintiffs contend that Defendant Foltz somehow set the stop in motion by speaking with Defendant Davidson on his personal telephone, however, Plaintiffs admit that what was said is unclear. Plaintiffs offer no evidence that Defendant Foltz encouraged or conspired to effect the initial stop. Defendant Foltz testified that based on Plaintiff Barnett's prior criminal history, he called the City officers "passing on information" that he had stopped Barnett earlier in the evening. Foltz specifically denied knowing that Davidson planned to stop Barnett's vehicle. Plaintiffs' speculative allegations are insufficient to prove a conspiracy. *Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999) ("Speculation and conjecture are not enough to prove that a conspiracy exist[ed].") *See also, Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) (conspiracy claim requires allegations of specific facts showing "meeting of minds" among alleged conspirators). Because Defendants Riggins, Foltz and Sablotney were not involved in the alleged unconstitutional violation relating to the initial stop, summary judgment is granted as to this claim.

**Detention and Pat-down searches**:

11

Plaintiffs complain that the officers detained them for an unreasonably long period of time and conducted excessive "pat-downs" at the scene.

When an officer makes a routine traffic stop, "the officer is entitled to conduct an investigation reasonably related in scope to the circumstances that initially" justified the interference. *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir.2000) (per curiam).  In connection with a legitimate traffic stop, an officer may detain a motorist while the officer completes certain routine tasks, such as writing a citation and completing computerized checks of a driver's license, vehicle registration, and criminal history.  *See United States v. Fuse*, 391 F.3d 924, 927 (8th Cir.2004), *cert. denied*, 544 U.S. 990 (2005).  "The officer cannot continue to detain a motorist after the initial stop is completed, unless the officer has 'a reasonably articulable suspicion for believing' criminal activity is afoot."  *Id*., citing *United States v. Beck*, 140 F.3d 1129, 1134 (8th Cir.1998).  An officer may perform a pat-down search if he has a reasonable suspicion that the person being searched is armed and dangerous. *See United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir.), *cert. denied*, 537 U.S. 879 (2002).

Plaintiffs have presented evidence that they were detained for approximately forty-five minutes to one hour before being transported to the jail.  During this time, Plaintiffs offer evidence that each of these Defendants was present; Defendant Riggins conducted pat-down searches of Plaintiffs;  Defendant Foltz performed a field sobriety test on Plaintiff Barnett; Defendant Foltz detained Ball in his vehicle and escorted her to jail; and Defendant Sablotney shined a light in Barnett's eyes.  Although Barnett was ultimately charged with DWI, Defendant Foltz admits that a single HGN test is insufficient to tell if a person is intoxicated and he would not have charged Barnett based on this one test.  Ball was never charged.

Defendants offer no evidence that they had a reasonable, articulable suspicion that Plaintiffs were armed and dangerous nor do they present sufficient evidence to support the extended detention of the Plaintiffs.  Further, the Court cannot say that the Defendants' continued detention of the Plaintiffs occurred based on "reasonable suspicion that criminal activity was afoot."  Accordingly, the Court cannot find that a reasonable officer in these Defendants' positions would have believed that their conduct was lawful in light of clearly established law.

Because each of these Defendants was present and arguably involved in the detention of the Plaintiffs, questions of fact preclude the entry of summary judgment on this claim.  Only Defendant Riggins was involved in the pat-down searches of Plaintiffs, thus, summary judgment is denied as to this claim against Riggins. Plaintiffs have offered no evidence to suggest that Defendants Foltz or Sablotney participated in or conspired to cause the pat-down searches conducted at the scene thus, summary judgment is granted as to Sablotney and Foltz on this claim.

**Strip Searches**:

"The Fourth Amendment reasonableness of a strip-search turns on 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.' " *Richmond v. Brooklyn Center*, 490 F.3d 1002, 1006 (8th Cir.2007) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

Plaintiffs contend that Defendant Riggins conducted the strip search of Plaintiff Ball and a jail matron conducted the strip search of Plaintiff Barnett.  Riggins admits that she had no probable cause to strip search Ball, but was ordered to do so by Davidson.  As Ball was not charged with any offense, the Defendants had no justification for conducting the strip search.

Defendants have not provided sufficient evidence that they suspected that Barnett was hiding a weapon or drugs.  Although Barnett was arrested for DWI, she had been detained at the scene for almost one hour and pat-down searches had been performed.  An officer must have reasonable suspicion that the person who is targeted for the strip search is carrying contraband. When there is no chance the detainee has hidden a weapon or contraband on his person, the Eighth Circuit Court of Appeals has found a strip search unjustified.  *See  Jones v. Edwards*, 770 F.2d 739, 741 (8th Cir.1985) ( detainee taken into custody at home on warrant related to leash law violation, and closely observed by officers prior to arrival at jail).   Based on the record, the Court finds that there are genuine issues of material fact as to whether the Defendants had a reasonable suspicion that Barnett was in possession of a weapon or contraband.

Plaintiffs contend that all of the Defendants acted in concert in the strip searches of the Plaintiffs and Defendant Sablotney encouraged the arrest and strip search of Ball by claiming that she had once held contraband in her underpants.  However, Plaintiffs offer no evidence that Riggins, Sablotney or Foltz participated in or conspired to cause the strip search of Barnett. Accordingly, summary judgment is granted to Riggins, Sablotney and Foltz on the strip search claim of Barnett.

The Court finds that sufficient questions of fact exist as to whether Sablotney participated in a conspiracy to deprive Plaintiff Ball of her constitutional rights with regard to the strip search. Riggins directly participated in the strip search of Ball.  Accordingly, summary judgment is denied as to Riggins and Sablotney with regard to the claims of Ball related to the strip search. No evidence exists to suggest that Foltz participated in or conspired to cause the strip search of Ball, accordingly, summary judgment is granted as to Foltz on the strip search claim of Ball.

14

**Arrest of Barnett:**

In a Fourth Amendment false arrest claim, the relevant inquiry is whether the officers had probable cause to arrest the Plaintiff. *See Baker v. McCollan*, 443 U.S. 137, 142 (1979). Probable cause exists if "the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed ... an offense" at the time of the arrest. *Hannah v. City of Overland, Mo.,* 795 F.2d 1385, 1389 (8th Cir. 1986)(quoting *United States v. Wallraff*, 705 F.2d 980, 990 (8th Cir.1983)). "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause." *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996). Therefore, law enforcement officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable. *Hunter v. Bryant*, 502 U.S. 224, 228-29 (1991).

Plaintiff Barnett was charged with driving while intoxicated, "drugs," refusal to submit to a  test and driving left of center.  Although Riggins denies completing any paperwork relating to the arrest of Barnett, Riggins admits that the record of arrest shows that she was the arresting officer.  Barnett was later found not guilty of all charges.  Based upon the record, including the testimony of Deputy Foltz wherein he testified that he would not have charged Barnett based on one field sobriety test, (Foltz deposition, p. 26, l. 22-24), the Court finds that genuine issues of material fact preclude the entry of summary judgment on this claim as to Defendant Riggins. Genuine issues of fact exist as to whether the officers involved in the arrest had an objectively reasonable basis to believe that probable cause existed to justify the arrest.   Although the City Defendants allegedly based the arrest on the one field sobriety test conducted by Foltz, no evidence suggest that Foltz or Sablotney participated in filing the charges against Barnett or

conspired to do so.   Accordingly, summary judgment is granted as to Foltz and Sablotney on

arrest claim of Barnett.

**State Law Claims:**

Plaintiffs bring state law claims against these defendants for false imprisonment,

malicious prosecution, abuse of process, slander/defamation and the tort of outrage.  Plaintiffs'

complaint was filed on May 9, 2008 and all of the events about which Plaintiffs complain

occurred March 5, 2007.  As an initial matter, the Court finds that Plaintiffs' claims for false

imprisonment and slander and defamation are barred by the one year statute of limitations.  Ark.

Code Ann. §§16-56-104(2)(B) and (3).

"To establish a claim for outrage, a plaintiff must demonstrate the following elements: (1)

the actor intended to inflict emotional distress or knew or should have known that emotional

distress was the likely result of his conduct; (2) the conduct was 'extreme and outrageous,'

'beyond all possible bounds of decency,' and was 'utterly intolerable in a civilized community';

(3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional

distress sustained by the plaintiff was so severe that no reasonable person could be expected to

endure it." *Kiersey v. Jeffrey*, 369 Ark. 220, 222, 253 S.W.3d 438 (2007) (quoting *Crockett v.

Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000)). The Arkansas Supreme Court has taken a narrow

view of claims for the tort of outrage.

In order to prevail on an abuse of process claim, a plaintiff must show: (1) a legal

procedure was set in motion in proper form, even with probable cause and ultimate success; (2)

the procedure was perverted to accomplish an ulterior purpose for which it was not designed; and

(3) a willful act was perpetrated in the use of process which was not proper in the regular conduct

16

of the proceeding. *South Arkansas Petroleum Co. v. Schiesser*, 343 Ark. 492, 36 S.W.3d 317 (2001).

In order to succeed on a claim for malicious prosecution a plaintiff must show: (1) a proceeding instituted by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages. *Sundeen v. Kroger*, 355 Ark. 138, 143, 133 S.W.3d 393 (2003).

Plaintiffs have failed to present facts which would support any of these state law claims against Defendants Foltz, Sablotney or Riggins. No evidence exists demonstrating malice or wilful conduct on the part of these defendants sufficient to establish a *prima facie* case on the tort of outrage, malicious prosecution or abuse of process. The Court finds that these Defendants are entitled to summary judgment on Plaintiffs' state law clams.

**City of Wynne:**

In the Amended Complaint, Plaintiffs allege that each of the City Defendants have admitted that they were not properly trained by the City of Wynne. (Davidson deposition, p. 18, l. 3-19, p. 91, l. 8-15); (Clark deposition, p. 9, l. 22-25, p. 10, l, 1-3); (Riggin deposition, p.50, l. 13-23). The City argues that each of these Defendants was properly trained and following the incident complained of the City conducted an investigation after which both Riggins and Davidson were terminated.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To constitute deliberate indifference, plaintiffs must show that the city "had notice that its procedures were

inadequate and likely to result in a violation of constitutional rights." *Id.* This notice may be actual or implied. As the Eighth Circuit has explained, "notice may be implied where failure to train officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious." *Thelma D. v. Bd. of Ed. of City of St. Louis*, 934 F.2d 929, 934 (8th Cir.1991) .

The Court finds that the City officers have reoccurring obligations to stop, detain, arrest and determine the appropriateness of  pat-down searches or strip searches such that a failure to train the City officers in the appropriate standards to apply in these situations is "so likely to result in a violation of constitutional rights that the need for training is patently obvious." Based on this finding and the testimony of the City Defendants that they did not receive adequate training, the Court finds that genuine issues of material fact exist as to whether the City adequately trained its officers precluding the entry of summary judgment on this issue.

Conclusion

Wherefore, the motion for summary judgment of Separate Defendant, Katherine Riggins, in her individual capacity, docket # 26 is granted with regard to Plaintiffs' claims relating to the initial stop of the vehicle;  denied as to Plaintiffs' claims related to the excessive detention and pat-down searches; granted with regard to the claims arising from the strip search of Barnett; denied as to the claims arising from the strip search of Ball; denied with regard to the arrest of Barnett and granted as to Plaintiffs' state law claims.

The motion for summary judgment of Separate Defendants Chris Foltz and Terry Sablotney, in their individual capacities, docket # 29 is granted as to Foltz and Sablotney with regard to Plaintiffs' claims relating to the initial stop of the vehicle;  denied as to Foltz and

18

Sablotney relating to Plaintiffs' claims of excessive detention: granted as to Foltz and Sablotney with regard to the pat-down searches of the Plaintiffs; granted as to Foltz and Sablotney with regard to the strip search of Barnett; denied as to Sablotney with regard to the strip search of Ball; granted as to Foltz with regard to the strip search of Ball; granted with regard to the arrest of Barnett and granted as to Plaintiffs' state law claims.

The motion of Separate Defendants Dean Davidson, Shelby "Tripp" Clark, Jr., Katherine Riggins, in their official capacities only, ("the City of Wynne, Arkansas"), and the City of Wynne, Arkansas, docket # 83, is denied.

IT IS SO ORDERED this 16th day of September, 2010.


_____
James M. Moody
United States District Judge